Caleb E. Mason, Esq. (State Bar No. 246653)
WERKSMAN JACKSON & QUINN, LLP
888 West Sixth Street, Fourth Floor
Los Angeles, California 90017
Telephone: (213) 688-0460
Facsimile: (213) 624-1942

Attorneys for Defendant
Cole Harris

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) CASE NO: 2:23-cr-00095-FMO |
|---|---|
| Plaintiff, | ) |
| vs. | ) DEFENDANT'S BRIEIFING BY ORDER OF THE COURT, REGARDING SALE OF RESIDENCE |
| COLE HARRIS et al., | ) |
| Defendants. | ) |

## I. INTRODUCTION

The Court has ordered briefing, ECF Doc. No. 171, regarding the potential sale of Mr. Harris's San Marino residence ("Residence"), which is currently posted as collateral securing his bond. Mr. Harris sets forth herein his responses and position as to the Court's questions about the potential sale.

The Residence is appraised at approximately $18 million. Under the terms of the bond, a sale or transfer of an asset of that value requires approval of the Court. (Bond, p. 2.) Mr. Harris would like to sell the Residence; indeed, he needs to sell the Residence to ameliorate the severe financial strains he is experiencing. In order to ask for approval, he needs to be able to tell the Court what he proposes to do, viz., "I request permission to sell the Residence to Buyer X for the price of

Y dollars." The Court could not evaluate a request such as, "I request permission to sell the Residence to an unknown person for an unknown amount." Such a request would be vague, speculative, and unripe. The prosecution would surely oppose such a request, and demand specification of the prospective buyer and sale amount. The only way to identify a potential buyer and sale amount is to list the Residence and see whether there are potential buyers, and if so what they are willing to pay. Only with that information in hand would a request for sale approval be ripe. Mr. Harris does not presently have that information.

## II.  LOGISTICS OF A POTENTIAL SALE

If a prospective buyer were to express interest in the Residence, at a given price point or range, a number of further steps would follow, as set forth in the Declaration of bail agent James DeMayo, filed herewith. One of these is a title search. A title search of the Residence shows the Court's lien on the property. (See Title Search performed August 24, 2023, attached.) No sale can be completed without clean title, and so the lifting of that lien would be a necessary contingency of any sale. In order to lift the lien, the Court could either (a) identify another property to secure the $4 million currently secured by the Residence, or (b) order that $4 million from the sale proceeds be held in escrow to secure the bond. Either of these options would be available to the Court, if a potential buyer is interested and a potential sale price is agreed to.

There is precedent for courts in this District permitting defendants to sell properties securing bonds, substituting in their place other properties or cash. Attached hereto as **Exhibits A and B** are orders filed in *United States v. Garcia et al.*, 2:13-cr-0451-GW (Judge Rosenberg), ECF Doc. No. 371, and *United States v. Tauber et al.*, 8:18-cr-0140-JLS (Judge Staton), ECF Doc. No. 140, allowing for the type of transfer potentially at issue in this case. In the above cases, the Court lifted the lien on the property to be sold, ordered that the amount of the bond be held in escrow as part of the sale until the sale closed and the defendant had

obtained title to the new home, and then modified the bond so that the new home secured the bond. The defendant then recorded the Court's lien on the new home. This procedure could be employed here, or the Court could accept cash or a cash deposit, to be held in escrow from the sale proceedings.

### III. DEFENSE RESPONSE TO THE GOVERNMENT'S COMMENTS REGARDING THE RELATIONSHIP BETWEEN THE PROSECUTION AND THE COURT

Finally, the Government's brief ("Brief"), ECF Doc. No. 172, makes several comments that warrant a response.

First, the Government appears to assert that "the U.S. Attorney's Office" either has, or should be granted, a veto power over a sale, a right to "participate" in a sale, or the power to act "on behalf of the Court." Brief at 3:4-18. This claim lacks merit. The U.S. Attorney's Office has no right to participate in a sale or to veto a sale. The lien is held by the Court. The U.S. Attorney's Office does not and cannot "act on behalf of the Court." Federal power in the United States is exercised by three separate branches of government. The very suggestion that a prosecutor in a criminal case could in any way "act on behalf" of the Court presiding over the case is offensive to our Constitution. So too is the Government's comment that "an Assistant United States Attorney in the Asset Forfeiture/Financial Litigation unit will appear in front of this Court to provide the expert counsel necessary to guide the parties and the Court through the sale process." Brief at 1:27-28. This is a bond proceeding, not an "asset forfeiture" proceeding. The U.S. Attorney's Office is before the Court as a party in adversarial litigation, not an amicus providing "expert guidance" that neither the defense nor the Court has asked for or requires. Prosecutors employed by the U.S. Attorneys Office are lawyers advocating for their client; they are not "guides" and their arguments are adversarial advocacy, not "guidance."

Second, the Government threatens to take ex parte actions to undermine a potential sale *even if the Court approves it*, by contacting prospective buyers and warning them off.  Brief at 5:13-15.  It would be startlingly unprofessional, if the Court approves a sale, for the prosecutors to make ex parte phone calls to prospective buyers to try to undermine it.  Yet that is what the Brief suggests the prosecutors intend to do.  The defense requests that, if the Court ultimately approves a sale, it order the prosecutors not to engage in ex parte actions to interfere with it.

Third, the Government reiterates the ad hominem contention that Mr. Harris, because he speaks Chinese, "will try to join defendant Chen in China" and live their "indefinitely."  This suggestion is offensive.  Mr. Harris is an American citizen, born and raised in the United States, with three American citizen children, all born and raised in the United States.

More broadly, the Government's approach to the pretrial release process reflects an unfortunately common prosecutorial impulse to treat pretrial release as an opportunity for punishment or "leverage."  "The principal purpose of a bail bond is to ensure the accused's appearance at the appointed time." *United States v. Gifford*, 423 F. Supp. 3d 819, 823 (C.D. Cal. 2019).  The pretrial release process is not a mechanism for punishment and/or the exertion of maximum "leverage" to compel a plea. It is troubling if young prosecutors are being taught to use the bond process to punish, to impoverish, to "leverage," or simply to make life difficult for defendants, or as a means toward lucrative property seizures.

The Government's request for raising the bond amount further, Brief at 3:19-5:5, is unwarranted. Mr. Harris's bond is presently set at $4,500,000.  That is likely one of the highest bond amounts presently pending in the District. It is probably one of the highest in the United States.  It is more than *twenty times* the bond amount set for Donald Trump.  It is more than *double* the bail schedule for

murder defendants in Los Angeles County.[1] A little perspective is in order. This is not a murder case, or an insurrection case. Still less is it two murders and twenty insurrections.

## IV. DEFENSE REQUEST THAT THE PROSECUTORS SIGN THEIR BRIEFS

Finally, the defense requests that the prosecuting attorneys sign their briefs. Throughout these proceedings, including the Brief filed today, the prosecutors have failed to sign their briefs. They have put a signature on an initial caption page, and then appended an unsigned memorandum of points and authorities. Filing unsigned memoranda violates this Court's Local Rules, *see, e.g.*, L.R. 11-1 (applicable in criminal cases under L.Cr.R. 49-1.3.1) *and* FRCP 11(a), and leaves it unclear which attorney, if any, is taking responsibility for the statements made in the memorandum, *see* FRCP 11(b).

Dated; August 28, 20223

Respectfully submitted,

Werksman Jackson & Quinn LLP

/s *Caleb Mason*

_____
Caleb E. Mason
Alan J. Jackson
Attorneys for Defendant Cole Harris

---

[1] The County bail schedule prescribes $1,000,000 for murder. The prosecutors' focus on the bond also appears to be distracting from their substantive litigation obligations in the case. This case is now more than six months old, but the prosecutors still have not completed production of discovery to the defense.